IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division


CAROLYN M. MASTERSON,
    Plaintiff,

v.                     Civil Action No. 3:08cv484

WYETH PHARMACEUTICALS,
    Defendant.


### MEMORANDUM OPINION

This matter is before the Court on the MOTION FOR SUMMARY JUDGMENT of the Defendant, Wyeth Pharmaceuticals. (Docket Number 12)  For the reasons set forth below, that motion will be denied in part and granted in part.

### I. STATEMENT OF FACTS

Carolyn M. Masterson, the Plaintiff, was employed by the Defendant, Wyeth Pharmaceuticals, Inc., from January 1999, until March 5, 2007. (Compl. at ¶¶ 4, 38.)[1]  Masterson was employed at that time as a "Manager Technical Operations and Product Support Applications Development." (Id. at ¶ 4.)  Masterson is a white

_____

[1] While the citations in this section are to Masterson's various documents, Wyeth does not dispute any of the facts stated in this section unless otherwise noted. (See Def. Mem. at 3-4.) There are many other factual allegations in Masterson's Complaint (and in her affidavit, which largely mirrors the Complaint).  The facts set forth in this section are those that have been identified as undisputed by the parties.

female who was 51 years of age when her Complaint was filed; therefore, she was approximately 50 years of age at the time of her termination. (See id. at ¶ 2.)

After a corporate reorganization in 2003, Masterson made a lateral move to a new position as the individual responsible "for compliance issues within Wyeth Pharma IS" and Norma Baker became Masterson's direct supervisor. (Id. at ¶¶ 6, 9, 10.) Masterson made several overtures to Baker regarding various other open positions between April and November of 2003; Baker denied all of these requests and applications. (Id. at ¶ 12.) Masterson alleges that these employment decisions were made because of Ms. Baker's preference for hiring younger employees and males, because they did not pose a threat to Baker's future career advancement. (Id. at ¶ 12; Masterson Aff. at ¶ 4.) These employment decisions are not those that are the subject of this action, but Wyeth nonetheless disputes them. (Def. Rep. at 4-5.)

Wyeth does not dispute, however, that Masterson met with Rose Hodges of Wyeth's human resources department in November 2003 to convey her interest in the various positions and to express her frustration with Baker's decisions. (Compl. at ¶ 14.) Following the conclusion of that meeting, Masterson alleges that Baker told her to "get over it" and said that

-2-

2

Masterson would "be sorry" if she went to human resources again. (Id.)[2]

After this confrontation, Baker continued to refuse to assign Masterson new assignments and did not promote her to a new position. (Compl. at ¶¶ 16, 17, 19.)  Thereafter, in June 2006, Masterson contacted Charlene Carson, Baker's supervisor, to complain about Baker's employment decisions and, in June 2006, met with Carson and Hodges, the human resources employee with whom she had met in 2003, to discuss the situation. (Id. at ¶¶ 22-23.)  Thereafter, both Hodges and Carson were transferred to different positions, and Arlette Foster, also of Wyeth's human resources department, began handling Masterson's complaints. (Id. at ¶¶ 24-25.)  Foster conducted an investigation, which concluded on September 27, 2006 with a finding that no action was needed. (Id. at ¶¶ 26-29.)

Baker completed her 2006 mid-year evaluation of Masterson in October in which she gave Masterson low scores for job performance. (Id. at ¶ 30.)  On October 30, 2006, Masterson was placed on a performance improvement plan ("PIP"), essentially disciplinary probation, based on these poor scores. (Id. at ¶

---

[2] Wyeth's motion papers do not directly admit or deny that this conversation occurred. (Def. Mem. at 3, 18-19.)  Norma Baker does not mention the conversation in her declaration. (See Def. Mem. at Ex. I.)  Wyeth, however, denies the allegation of the conversation in its Answer. (Ans. at ¶ 23.)

31.) A follow-up meeting was held on January 18, 2007, at which Masterson was advised in writing, through an "On Notice" form, by Ron Brigham of humam resources and Baker that her allegedly poor performance had not improved. (Id. at 34.) Masterson was terminated on March 5, 2007 and informed by human resources that the reason for her termination was poor performance. (Id. at 38.)

Masterson filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC") in August of 2007. (Id. at 43.) The EEOC issued a "Notice of Right" on May 1, 2008, and Masterson's Complaint followed on July 30, 2008. (Id.)

The Complaint in this case seeks damages for violations of the Age Discrimination in Employment Act, 29 U.S.C. § 601 et seq. ("ADEA"), the prohibition of gender discrimination in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ("Title VII"), and the prohibition on retaliatory discharge found in Title VII, 42 U.S.C. § 2000e-3. (Compl. at Counts I, II, III, respectively.) Wyeth has filed a Motion for Summary Judgment, arguing that Masterson cannot support her claims of either substantive discrimination or retaliatory discharge. (Def. Mem. at 1-2.) Wyeth also claims that any of Masterson's claims arising before October 21, 2006 are time-barred under the relevant statute. (Id. at 2.) Masterson argues that summary

-4-

4

judgment is inappropriate, but does not respond to Wyeth's argument that some of her possible claims are time barred. (Pl. Mem. at 6-7.)

For the reasons set forth below, Wyeth's motion will be granted as to the substantive discrimination counts, but denied as to the claim of retaliatory discharge.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact in the case. See Fed. R. Civ. P. 56(c). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). A material fact in dispute appears when its existence or non-existence could lead a jury to different outcomes. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party. See id.

Hence, summary judgment is only appropriate when, after discovery, the non-moving party has failed to make a "showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When a motion for summary judgment is made, the evidence presented must always be taken in the light most favorable to the non-moving party. See Smith v. Virginia Commonwealth Univ., 84 F.3d 672, 675 (4th Cir. 1996).

Nevertheless, a party cannot "create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Accordingly, the party who bears the burden of proof at trial cannot survive summary judgment without sufficient evidence to sustain his or her burden of proof on that point. Celotex Corp., 477 U.S. at 327.

## B. Age Discrimination Claims

The ADEA's core provision, codified at 29 U.S.C. § 623, prohibits employers and certain others from discrimination based on an individual's age whenever the individual is at least 40 years of age but less than 65 years of age. To succeed on an ADEA claim, the plaintiff must demonstrate, by a preponderance of the evidence, that "the plaintiff's age ... actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." Reeves v. Sanderson

_Plumbing Products, Inc._, 530 U.S. 133, 141, (2000) (internal quotation marks and alteration omitted).

A plaintiff may overcome a motion for summary judgment against her ADEA claim by relying on either of two methods of proof. The first method of proving a violation of the ADEA is to provide direct or circumstantial evidence that the prohibited characteristic (_i.e._, age) was a motivating factor in the adverse employment action. See _Hill v. Lockheed Martin Logistics Mgmt., Inc._, 354 F.3d 277, 284 (4th Cir. 2004). The second method is known as the "_McDonnell Douglas_ burden-shifting framework" which requires the plaintiff to first demonstrate a _prima facie_ case of discrimination, then shifts the burden to the employer to demonstrate the employer to demonstrate a legitimate reason for the adverse employment action, then shifts the burden back to the plaintiff to demonstrate the falsity of the proffered reason. See _Laber v. Harvey_, 438 F.3d 404, 431-32 (4th Cir. 2006). Masterson does not make clear under which theory she is proceeding, so analysis of both is necessary.

1. **Direct or Circumstantial Evidence of Age Discrimination**

As noted above, the mixed-motive analysis requires the plaintiff to provide direct or circumstantial evidence that the prohibited characteristic was a motivating factor in the adverse employment decision. See _Laber_, 438 F.3d at 430; _Hill_, 354 F.3d

-7-

at 284.  The plaintiff must produce sufficient evidence to create a genuine question of fact as to whether "the protected trait actually motivated the employer's decision... or actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." <u>Hill</u>, 354 F.3d at 286 (internal quotations and modifications omitted).

Direct evidence of discrimination is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." <u>Warch v. Ohio Cas. Ins. Co.</u>, 435 F.3d 510, 520 (4th Cir. 2006) (quoting <u>Taylor v. Virginia Union Univ.</u>, 193 F.3d 219, 232 (4th Cir. 1999)).  Even if an apparently discriminatory statement exists, it does not create direct evidence of discrimination unless it has a nexus with the employment decision. <u>See</u> <u>id.</u>

The only pieces of evidence advanced by Masterson that could colorably be called direct evidence are some of Baker's alleged statements.  First, Baker is said to have made comments about Masterson's age and "mentioned that certain drugs were helpful while going through menopause."  Second, Baker allegedly stated, in connection with employees other Masterson, that she would not hire any more "old foggies [sic]." (Masterson Aff. at ¶ 6, 12.)   Even assuming that Masterson's affidavit is

-8-

8

sufficient to create a genuine issue as to whether these statements occurred, neither of them has been shown to have the requisite nexus to Masterson's termination to constitute direct evidence of discrimination, because neither was connected either temporally or in subject matter with Masterson's termination. See Warch, 435 F.3d at 520. Indeed, the Fourth Circuit came to a virtually identical conclusion in Warch, where it found that an employer's disparaging comments about older individuals possessed an insufficient nexus to the adverse employment decision when they were unrelated to the adverse employment decision at issue. See id.; see also Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 511-12 (4th Cir. 1994) (employer's comment that "there comes a time when we have to make way for younger people" lacked sufficient nexus to termination of employee when made two years prior to that termination and was not explicitly connected to it).

When evaluating whether the plaintiff has proffered sufficient circumstantial evidence to sustain her claims in the face of a summary judgment motion, the court should consider whether, as a whole, the plaintiff has "presented probative circumstantial evidence to show that [the employer] acted with discriminatory animus." Warch, 435 F.3d at 521. Masterson alleges that Baker favored younger employees for the various

-9-

open positions and put Masterson in disfavorable employment situations. (Masterson Aff. at ¶¶ 5, 7, 8.)   Masterson also alleges that this was done despite her position as Baker's deputy and Masterson's seniority over those younger individuals. (Id. at ¶ 11.)   According to Masterson, these facts demonstrate that her age was a deciding factor in Baker's decisions because Baker felt threatened by more senior employees. (Pl. Mem. at 6-7.)

Masterson has not shown, however, that any of these actions have any nexus whatsoever to her termination in March of 2007, which was ostensibly based on her poor performance. (Masterson Aff. at ¶ 40-42.)   The undisputed evidence shows that Masterson had regularly received performance ratings of average (i.e., three out of a possible five) during her performance evaluations from 2003 to 2005. (Id. at ¶ 28; Baker Decl. at ¶ 5.)   Masterson then received a score of "below expectations" (i.e., two out of a possible five) on her October, 2006 mid-year evaluation and was correspondingly placed on the PIP. (Masterson Aff. at ¶ 28; Baker Decl. at ¶ 8.)   Baker was of the opinion that Masterson was not meeting her responsibilities under the PIP. (Masterson Aff. at ¶ 33; Baker Decl. at ¶ 9.)   Masterson was terminated and informed that her termination was based on these documented

performance shortcomings. (Baker Decl. at ¶ 10; Masterson Aff. at ¶ 42.)

Masterson has provided no evidence demonstrating that the putatively younger colleagues who received the positions that she coveted were not better qualified for those particular positions or that they did not have better disciplinary scores than her history of "average." Furthermore, Masterson has provided no evidence other than her own personal opinion that age-based animus motivated Baker's actions. (See, e.g., Masterson Aff. at ¶ 4 ("I believe that Ms. Baker perceived me a [sic] threat to her position and job security, in a way that younger and/or male employees did not pose [sic]."); ¶ 43 ("Upon information and belief, the. . . harassment and disparate treatment that I received from Norma Baker was motivated by [age-based animosity].")).

In similar cases involving an allegation of age discrimination, courts have held that self-serving inferential statements such as these are insufficient to sustain the ADEA claim in the face of a motion for summary judgment in the face of documented performance inadequacies. See Warch, 435 F.3d at 521; Hale, 428 F.Supp.2d at 479-80. Indeed, the Fourth Circuit in Warch noted that failed performance evaluations coupled with vague claims concerning disparate treatment of younger employees

"does not create any inference that age was a motivating factor" in a termination. 425 F.3d at 521. Therefore, Masterson has not put forth sufficient direct or circumstantial evidence to maintain her ADEA claim. See id. at 520-21.

## 2. McDonnell Douglas Analysis

As noted above, if a plaintiff does not succeed under the mixed-motive analysis, she may still press her claims under the McDonnell Douglas burden-shifting framework. See Laber, 438 F.3d at 431-32. The first step in that framework requires that the plaintiff demonstrate a prima facie case of discrimination:

> To demonstrate the prima facie case of sex or age discrimination under the pretext framework, the plaintiff must show that (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

Hill, 354 F.3d at 285. Wyeth concedes that Masterson has met her burden on the first two of these elements because she is between 40 and 65 years-of-age and was terminated from her position – an adverse employment action. (Def. Mem. at 6.)

Wyeth argues, however, that Masterson has not demonstrated any evidence that would support finding for her on the third element. (Id. at 6-7.) The undisputed facts show that Masterson

was rated as performing below expectations in October, 2006; that Baker thereafter placed her on the PIP; that Baker felt that Masterson had not met her obligations under the PIP; and that Masterson was informed when she was terminated that the reason for the termination was poor performance. (Masterson Aff. at ¶¶ 28, 33, 42; Baker Decl. at ¶¶ 8-10.)   Wyeth employees other than Baker concurred in Baker's assessment of Masterson's poor work performance, including Baker's supervisor Paul Abernathy, and various human resources personnel. (See Masterson Aff. at ¶¶ 38, 40, 41, Exs. 16, 17.)    The only evidence supporting Masterson's argument that she was performing at the level expected by her employer is her own allegation that Baker's portrayal of her performance was inaccurate and the disputed allegation that Baker never informed Masterson that she felt Masterson was not meeting her PIP goals. (Masterson Aff. at ¶¶ 32-33; Baker Decl. at 9.)

The Fourth Circuit consistently and unequivocally has held that the plaintiff's "own testimony, of course, cannot establish a genuine issue as to whether [the plaintiff] was meeting [the employer's] expectations." King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (collecting cases).   This, of course, is because it is the employer's perception that matters, not the employee's self-assessment. See id.   To establish this facet of a prima

facie case, therefore, the plaintiff must provide some evidence demonstrating the employer's opinion, such as documents from the employer or expert opinion that her performance was satisfactory. See id. at 149-50. Masterson has shown that her previous ratings were "average," but she has furnished no evidence that, for the period at issue, her performance was other than as portrayed in the below expectations rating she was given. Nor has she offered proof that her performance improved during the probationary period. Therefore, Masterson has not made out the third component of a prima facie case of discrimination.

Masterson's prima facie case also fails on the fourth element, that her "position remained open or was filled by a similarly qualified applicant who was substantially younger than the plaintiff, whether within or outside the class protected by the ADEA." Laber, 438 F.3d at 430. A plaintiff may be relieved of this burden if the subsequent hiring decision is made to disguise the discrimination toward the plaintiff or is made by a difference decisionmaker than the one responsible for the termination. See Lettieri v. Equant, Inc., 478 F.3d 640, 647-48 (4th Cir. 2007).

A review of the record reveals that Masterson has set forth no evidence concerning her replacement, the applicability of

either of the recognized exceptions, or whether her position remained open after her termination. Therefore, her prima facie case fails on the fourth element, as well. See Ball v. Wal-Mart Stores, Inc., 228 F.Supp.2d 698, 704 (W.D.N.C. 2002) (finding that a plaintiff's prima facie claim failed on the fourth element when she "ha[d] simply not addressed this element.").

If a plaintiff successfully establishes a prima facie case of discrimination, the burden passes to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." Hill, 354 F.3d at 285. The Fourth Circuit has described poor job performance as a "widely recognized . . . valid, non-discriminatory bas[is] for any adverse employment decision." Evans v. Technologies Applications & Service Co., 80 F.3d 954, 960 (4th Cir. 1996). Wyeth has made a documented showing of poor employment performance by Masterson. (See Masterson Aff. at ¶¶ 28, 33, 42; Baker Decl. at ¶¶ 8-10.) Therefore, Wyeth has articulated a valid nondiscriminatory reason for Masterson's termination. See Hill 354 F.3d at 298 (describing a history of poor job performance as a "legitimate, nondiscriminatory reason for the termination decision.").

Because Wyeth has articulated a legitimate reason for Masterson's termination, the burden now shifts back to Masterson

-

15

to create a genuine issue of fact "that the employer's stated reasons "were not its true reasons, but were a pretext for discrimination." Id. at 285.   Generally, the bare assertions of the plaintiff "in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." Hawkins v. PepsiCo, Inc., 203 F.3d 274, 281 (4th Cir. 2000).

Masterson has provided essentially no probative evidence that would demonstrate that Wyeth's stated reason for firing her (her poor work performance) is a pretext for age discrimination. The entirety of her position on this point is her own bare assertion that Baker was motivated by improper animus as to her age. (See Masterson Aff. at ¶¶ 4, 43); see also Part II.B.1, supra.   Therefore, Masterson has not provided sufficient evidence to cast doubt on the veracity of Wyeth's asserted reasons for terminating her.   Her ADEA claim therefore fails under the McDonnell Douglas burden shifting framework. See E.E.O.C. v. Reynolds Metals Co., 212 F.Supp.2d 530, 538-39 (E.D.Va. 2002).

## C. Gender Discrimination Claims

Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Title VII "makes plain the purpose of Congress to assure

equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 526 (1993). To prevail on a claim for gender discrimination, the plaintiff must prove that an adverse employment action was taken against her and that the adverse employment action was, at least in part, motivated by her gender. See O'Malley, Grenig, & Lee, 3C Federal Jury Practice and Instructions, § 171.20 (5th ed. 2000).

A motion for summary judgment on a claim that Title VII has been violated by racial discrimination also may be addressed by making a showing, by direct or circumstantial evidence, that race was a motivating factor in the adverse employment decision, or by reliance on the burden shifting framework created in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 317-18 (4th Cir. 2005). Here too, Masterson is not entirely clear about how she is approaching the issues of gender discrimination. Thus, both modes of proof will be addressed.

### 1. Direct or Circumstantial Evidence of Discrimination

In order to survive a motion for summary judgment:

-

> [The] plaintiff may establish a claim of discrimination by demonstrating through direct or circumstantial evidence that sex [] discrimination motivated the employer's adverse employment decision. The employee, however, need not demonstrate that the prohibited characteristic was the sole motivating factor to prevail, so long as it was a motivating factor.

Hill, 354 F.3d at 284. This burden is largely similar to that imposed by the ADEA. Therefore, most of the analysis set forth in Section II.B.1, above, applies to the analysis of Masterson's gender discrimination claim.

As noted above, direct evidence is that which "reflect[s] directly the alleged discriminatory attitude and that bear[s] directly on the contested employment decision." Warch, 435 F.3d at 520. The only putatively "direct evidence" presented by Masterson would be Baker's alleged comments concerning Masterson's status as a single parent and experience going through menopause. (Masterson Aff. at ¶ 6.) As was true about the alleged comments respecting Masterson's age, these comments about gender have no nexus to Wyeth's termination decision, being divorced in content, context, and time from that adverse employment decision. See Warch, 435 F.3d at 520.

Proving a claim of gender discrimination by way of circumstantial evidence requires that the plaintiff establish sufficient evidence to create a genuine question of fact as to

whether the employer acted with a discriminatory intent. See id. at 521.   As detailed above, Masterson attempts to meet this burden through nothing other than bare accusations of discriminatory intent. (See Masterson Aff. at ¶¶ 4, 43; see also Part II.B.1, supra.)   Such self-serving allegations are insufficient to establish the presence of discriminatory motive; Masterson's Title VII claim therefore fails under the mixed motive analysis. See Warch, 435 F.3d at 521; Hale, 428 F.Supp.2d at 479-80.

### 2. McDonnell Douglas Framework

The McDonnell Douglas framework for gender discrimination under Title VII is essentially the same as that under the ADEA. See Lettieri, 478 F.3d at 646; Hill 354 F.3d at 285.   The first step of this framework requires the plaintiff to prove a prima facie that

> (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

Lettieri, 478 F.3d at 646.   As with Masterson's ADEA claim, Wyeth admits that Masterson has met the first two components of this test: she is a woman, and thus a member of a protected

class, and she suffered an adverse employment action in the form of her termination on March 5, 2007. (Def. Mem. at 13.)  Wyeth argues, however, that Masterson cannot complete the required prima facie case, because she has insufficient evidence to prove the third and fourth prongs. (Id.)

Masterson's failure to provide proof of the third and fourth facets of the McDonnell Douglas prima facie case is detailed above in Section II.B.2.  Assessment of those two components is identical in the Title VII and ADEA contexts. Thus, that analysis will not be repeated here.  Masterson's Title VII gender discrimination therefore fails under the McDonnell Douglas framework and Wyeth's motion for summary judgment on that claim will be granted.

Assuming that Masterson had presented a prima facie case of discrimination (which she did not), burden would then pass to Wyeth to prove a legitimate, nondiscriminatory reason for Masterson's termination. See Lettieri, 478 F.3d at 646.  Wyeth's undisputed presentation of documented performance deficiencies is sufficient to meet this burden. See Hill 354 F.3d at 298.

Wyeth having met its burden, the McDonnell Douglas framework again passes the burden to Masterson to prove that Wyeth's proffered reason is pretextual, i.e., a façade to cover their allegedly discriminatory motive. See Lettieri, 478 F.3d at

-                                                                    20

646. As noted above, this burden is similar to the plaintiff's burden under the mixed motive analysis: both require an evidentiary showing that a discriminatory motive was a motivating factor in the adverse employment action. See id. at 646-47.

Masterson's proffered evidentiary support for her claim of gender discrimination rests on two comments made by Baker that were divorced in time and subject matter from her termination and on her bare allegation that Baker's performance assessments were inaccurate. See Section II.C.1, supra. The alleged comments lack a nexus to the adverse employment decision, and therefore are not probative on the question of Baker's motives for the termination. See Warch, 435 F.3d at 520. Further, Masterson's bare allegations are insufficient to create a genuine issue of fact as to the accuracy of her performance evaluations. See King, 328 F.3d at 149. Even taken together, therefore, Masterson has not produced sufficient evidence to meet her burden under the McDonnell Douglas analysis. Hence, Wyeth's motion for summary judgment on Masterson's Title VII gender discrimination claim will be granted.

## D. Retaliation

Title VII also prohibits an employer from taking adverse employment actions against individuals who have

-

> opposed any practice made an unlawful employment
> practice by this subchapter, or because he has
> made a charge, testified, assisted, or
> participated in any manner in an investigation,
> proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). Claims alleging that an employer has taken action in violation of this section are referred to as "retaliation" claims. See King, 328 F.3d at 150-51. To succeed on a retaliation claim, the plaintiff must prove that: (1) she engaged in protected conduct; (2) she was subjected to an adverse employment action that occurred after that conduct; (3) the protected conduct was a motivating factor in the employer's decision to take the adverse employment action. See O'Malley, Grenig, & Lee, 3C Federal Jury Practice and Instructions, § 171.25 (5th ed. 2000). At the summary judgment stage, retaliation claims are provable by the same two modes as substantive discrimination claims: the McDonnell Douglas burden shifting framework or direct or circumstantial evidence of retaliatory discrimination. See King, 328 F.3d at 150-51 (applying McDonnell Douglas framework).

Wyeth concedes that Masterson has raised a genuine issue of fact as to her taking of a protected activity and Wyeth subjecting her to an adverse employment action. (Def. Mem. at 17.) The question, therefore, is whether Masterson has provided sufficient evidence to support an inference that the protected

conduct was a motivating factor in the employer's decision to take the adverse employment action.  <u>See</u> O'Malley, Grenig, & Lee, 3C <u>Federal Jury Practice and Instructions</u>, § 171.25 (5th ed. 2000).

Similarly to substantive discrimination claims, retaliation claims under may be proved by direct or circumstantial evidence "that both reflect[s] directly the alleged discriminatory attitude and that bear[s] directly on the contested employment decision." <u>Kubicko</u>, 181 F.3d at 553.  Proffered evidence of retaliatory discharge should be considered as a whole, and there must be a nexus between the evidence of discriminatory intent and the adverse action. <u>See</u> <u>id.</u>  While there are no "smoking gun" statements from Baker or any other employee of Wyeth indicating an intent to take retaliatory actions against Masterson because of her protected activity, a causal link between the activity and the adverse action can be proven by the circumstantial evidence of a very close temporal link. <u>See</u> <u>Clark County Sch. Dist. V. Breeden</u>, 532 U.S. 268, 273 (2001).

Beginning in May of 2006, Masterson began complaining of her treatment at the hands of Baker to Wyeth human resources. The exact content of Masterson's complaints to Carson during this period is disputed, but Masterson testified that they contained allegations of age and gender discrimination.

(Masterson Aff. at ¶ 15; Def. Mem. at 19.)   Furthermore, it is undisputed that Baker knew of Masterson's complaints and that Carson was meeting with Masterson to discuss them.   (See Masterson Aff. at Ex. 1,2.)   There is a disputed issue of fact as to whether Masterson made further complaints of discrimination at the June 6 meeting between her and Carson. (See Masterson Aff. at ¶ 17.)

Feeling that her concerns had not been met at the June 6 meeting, Masterson sent several emails to Foster complaining of Baker's purported "illegal discrimination." (Id. at Exs. 3, 4, 5.)  Foster and Masterson held an in-person meeting on August 7, 2006 to discuss the emails, and Foster's handwritten notes memorializing the meeting include a mention of "unlawful discrimination." (Id. at Ex. 6.)   While there is no direct evidence in the record that these particular complaints were passed on to Baker, it may be reasonably inferred that they were, given the undisputed evidence of Wyeth's history of conferring with Baker about the Masterson situation.

On September 27, 2006, Foster issued her memorandum closing the investigation of Masterson's complaints.  The memorandum mentions Masterson's allegations of "retaliation," but makes no mention of any claims of age or gender discrimination, nor does it mention that the retaliation was motivated by complaints of

discrimination. (Id. at Ex. 9.)[3]   Baker testified during her deposition that she received this memorandum on or about September 27. (Def. Rep. at 13 n.13.)   While the release of this memorandum does not directly demonstrate that Baker knew of Masterson's complaints of illegal discrimination, it does support an inference that Baker was regularly informed of Masterson's complaints by human resources.

Viewing the evidence in the light most favorable to Masterson, Baker's mid-year review could be found to be the first step in Masterson's inevitable termination process. (Def. Mem. at 7.)  Baker would have received Foster's report approximately a week before that review, well within the range of temporal proximity sufficient to create an inference that the protected activity was the cause of the adverse employment action. See Lettieri, 478 F.3d at 650.   Furthermore, even considering the complaints of discrimination made by Masterson during July and August, only two to three months separated those complaints from the adverse activity – still within the range, though narrowly so, sufficient to raise the inference of causation. See King, 328 F.3d at 151 n.5.

---

[3]  The absence of any comment about Masterson's assertions of "illegal discrimination" is itself quite strange given that the subject of the investigation included complaints about illegal discrimination.

This inference is further buttressed by the fact that Masterson had a long history of adequate performance evaluations and sparse history of employment problems prior to Baker's arrival as her supervisor. Thus, the 2006 mid-year review represents a significant change in performance appraisals occurring in close temporal proximity to a report of protected activity. See Lettieri, 478 F.3d at 650.[4]

Thus, Masterson has provided sufficient circumstantial evidence to create an inference of retaliatory intent, and Wyeth's motion for summary judgment on her retaliation claim will be denied. It is not necessary to address the McDonnell Douglas burden shifting analysis of Masterson's retaliation claim because she has provided sufficient circumstantial evidence of retaliation to avoid summary judgment.

**E. Time Bar**

Wyeth's final argument is that any of Masterson's claims that arose before October 21, 2006 are time-barred by 42 U.S.C. § 2000e-5(e)(1). (Def. Mem. at 21.) Masterson did not explicitly raise any such claims because the charges in her

---

[4] It is not necessary now to factor in Baker's threat of retaliation in 2003 but it might well be admissible at trial and, if so, it can be considered on summary judgment. The threat, although temporally removed from the employment termination, might be admissible respecting Baker's general mind-set and attitude about those who complained to the human resources department about her conduct.

Complaint are based on her termination of March 5, 2007. (Compl. at Counts I, II, III.)  Additionally, Masterson does not respond to Wyeth's argument on this point. (See generally Pl. Mem.) However, at oral argument, Masterson's counsel acknowledges the effect of the time-bar.

Section 2000e-5(e)(1) of Title 42 provides that any charge brought under Title VII must be filed with the EEOC within 300 days of the violation. See Venkatraman v. REI Systems, Inc., 417 F.3d 418, 420 (4th Cir. 2005).[5]  This requirement is absolutely mandatory; claims not brought within the statutory period are entirely waived. Id.

Masterson filed her complaint with the EEOC on August 24, 2007. (Compl. at ¶ 43.)  Employment actions occurring more than 300 days prior to that date (i.e., before October 21, 2006), are therefore outside the statutory limitation period. (Def. Mem. at 21.)  Therefore, Wyeth is correct that any claim of Masterson's derived from an adverse employment action arising prior to that date (e.g., Baker's refusals to promote or move Masterson during 2003 and 2004 described in paragraphs 16, 17, and 19 of the Complaint).  However, it also is settled that, under certain

---

[5] The recent revisions to 42 U.S.C. § 2000e-5 do not affect this analysis, as they only pertain to discrimination claims respecting unfair compensation, which is not an issue in this case. See 42 U.S.C. § 2000e-5(e)(3)(A), (B); see also Lilly Ledbetter Fair Pay Act of 2009, Pub. L. 111-2 (2009).

circumstances, evidence of time-barred acts of discrimination may be admissible as bearing on the employer's intent respecting conduct that is not time-barred. A decision on that point now is not necessary.

### III. CONCLUSION

For the foregoing reasons, the Defendant's MOTION FOR SUMMARY JUDGMENT (Docket No. 12) will be granted as to the Plaintiff's substantive discrimination claims in Counts I and II but denied as to her retaliation claim in Count III.

The Clerk is directed to send a copy of this Memorandum Opinion to the plaintiff.

It is so ORDERED.

_____ /s/      REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April 23 2009

28